688 A.2d 1082

IN RE PETITION FOR AUTHORIZATION TO CONDUCT A REF-
ERENDUM ON THE DISSOLUTION OF UNION COUNTY
REGIONAL HIGH SCHOOL DISTRICT NO. 1.

Superior Court of New Jersey
Appellate Division

Argued December 2, 1996—Decided February 20, 1997.

Before Judges BROCHIN, KESTIN and EICHEN.

*Agnes I. Rymer* argued the cause for appellants Board of Education of the Borough of Garwood and Borough of Garwood (*DeCotiis, Fitzpatrick & Gluck,* attorneys; *Ms. Rymer* and J.S. Lee Cohen, on the brief).

*Robert A. Goodsell* argued the cause for respondent Borough of Mountainside (*Post, Polak, Goodsell & Macneill,* attorneys; *John N. Post* and *Mr. Goodsell,* on the brief).

*Nancy Kaplan,* Deputy Attorney General, argued the cause for respondent N.J. Department of Education, Board of Review (*Peter Verniero,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Michelle Lyn Miller,* Deputy Attorney General, on the brief).

*Vito A. Gagliardi, Jr.* argued the cause for respondents Boards of Education of Berkeley Heights, Kenilworth, Mountainside and Springfield (*Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen,* attorneys; *Mr. Gagliardi,* of counsel and on the brief; *Michael R. Cole* of *Riker, Danzig, Scherer, Hyland & Perretti,* of counsel).

*Douglas J. Kovats* argued the cause for respondent Board of Education of Clark (*Kenney & Gross,* attorneys; *Mr. Kovats,* on the brief).

No other parties participated in this appeal.

The opinion of the court was delivered by

BROCHIN, J.A.D.

Since 1935, the Union County Regional High School District No. 1 has been responsible for providing a high school education for students residing in the six municipalities of Berkeley Heights, Clark, Garwood, Kenilworth, Mountainside and Springfield. Pursuant to *N.J.S.A.* 18A:13–51, the boards of education and governing bodies of five of these municipalities, Berkeley Heights, Clark, Kenilworth, Mountainside, and Springfield, applied to the Union County Superintendent of Schools "to make an investigation as to the advisability of the dissolution of the regional district." *Ibid.* In accordance with *N.J.S.A.* 18A:13–52, the County Superintendent filed a report which concluded that dissolution was inadvisable. Apparently unpersuaded, the boards of education of Berkeley Heights, Kenilworth, Mountainside, and Springfield, and the governing bodies of Berkeley Heights, Kenilworth and Mountainside petitioned the State Commissioner of Education pursuant to *N.J.S.A.* 18A:13–54, "for permission to submit to the legal voters of … each constituent district whether the regional district shall dissolve."

The petition for permission to conduct a dissolution election was submitted to a Board of Review chaired by the Commissioner. *See N.J.S.A.* 18A:13–56. In a brief letter opinion issued November 8, 1995, the board granted the petition and elaborated on the basis of its decision in an "amplification" issued December 13, 1995. The election was held and a majority of voters in the entire regional district and in four out of the six constituent local school districts voted in favor of dissolution.

The Borough of Garwood and the Garwood local board of education have appealed to this court from the decision of the Board of Review which refused to block the election. For the following reasons, we affirm the decision of the Board of Review.

To initiate the process of dissolving a special purpose regional school district, a majority of the constituent local boards of education and a majority of the governing bodies of the municipalities that compose the regional district must first apply to the

County Superintendent of Schools. *N.J.S.A.* 18A:13–51. It is important to note, however, that they do not apply to the Superintendent for permission to dissolve the district. Their application must request the Superintendent "to make an investigation as to the *advisability* of the dissolution of the regional district." *Ibid.* (emphasis added). The product of the Superintendent's investigation is a report to be filed with the regional board of education, each of the constituent local boards of education, and the municipal governing bodies. *N.J.S.A.* 18A:13–52. No statute or regulation requires the report to be filed with the Commissioner of Education or with any other administrative body. The report is not a preliminary decision like that of an administrative law judge under the Administrative Procedure Act. *Cf. N.J.S.A.* 52:14B–10 (requiring administrative law judge to file a "recommended report and decision" with findings of fact and conclusions of law, which may be adopted as the final decision in a case). The County Superintendent's report is solely his recommendation to the regional and local boards of education and the municipal governing bodies of the district containing

> such financial, educational and other information as he may deem necessary to enable said governing bodies and local boards of education and regional board of education to form an intelligent judgment as to the advisability of the proposed ... dissolution and the effect thereof upon the educational and financial condition of ... each of the constituent districts in the event of a dissolution. ...
>
> [*N.J.S.A.* 18A:13–52]

Once a majority of the local boards of education and a majority of the municipal governing bodies have requested the County Superintendent to "make an investigation as to the advisability of the dissolution of the regional district," any board or governing body can "petition the commissioner for permission ... to submit to the legal voters of each constituent district whether the regional district shall dissolve." *N.J.S.A.* 18A:13–54. Whether the County Superintendent has recommended for or against dissolution makes no legal difference. In either event, the Commissioner must submit the petition to the Board of Review, an *ad hoc* committee whose members are the Commissioner of Education as chairman, a member of the State Board of Education, the State Treasurer or

his designee, and the Director of the Division of Local Government Services. *N.J.S.A.* 18A:13–56. The Board of Review then either grants or refuses the petition for an election at which the voters of the regional district will decide on whether or not it will be dissolved. *Ibid.*

The basis for the decision of the Board of Review is closely circumscribed. The statute directs that the Board of Review "shall ... Consent to the granting of the application" or "shall ... Oppose the same because if the same be granted" and the district is dissolved,

1. An excessive debt burden will be imposed ... upon any of the constituent districts ...;

2. An efficient school system cannot be maintained ... in any of the constituent districts ... without excessive costs;

3. Insufficient pupils will be left ... in any of the constituent districts ... to maintain a properly graded school system; or

4. [Because of] Any other reason which it may deem to be sufficient; ....

[*Ibid.*]

Significantly, any of the first three circumstances specified by the statute as a justifiable reason to refuse permission for an election would result in a condition inconsistent with the "thorough and efficient system of free public schools ..." which the State is obligated to maintain and support. *N.J. Const.* art. VIII, § 4, ¶ 1; *cf. N.J.A.C.* 6:3–7.4 ("The board of review ... shall include in its final determinations required by *N.J.S.A.* 18A:13–56 [for withdrawal from a regional district] ... any specific conditions under which its consent is granted in order to insure that a thorough and efficient system of public schools will be maintained in the withdrawing district(s) or municipality(ies) and the remaining regional district."); *In re Upper Freehold Reg'l School Dist.,* 86 *N.J.* 265, 430 *A.*2d 905 (1981)(to implement the constitutional mandate, the Commissioner has the power to order the issuance of school bonds despite the voters' defeat of their issuance in a school bond election). Of course, "a thorough and efficient system of free public schools" also implies a system that complies with other constitutional imperatives. *Cf. N.J. Const.* art. I, ¶ 5; *Board of*

*Educ. of Englewood Cliffs v. Board of Educ. of Englewood,* 257
*N.J.Super.* 413, 608 *A.*2d 914 (App.Div.1992), *aff'd,* 132 *N.J.* 327,
625 *A.*2d 483, *cert. denied,* 510 *U.S.* 991, 114 *S.Ct.* 547, 126 *L.
Ed.*2d 449 (1993) (importance of racial balance may preclude
severance of sending-receiving relationship and could possibly
require regionalization).

■ We conclude that the fourth ground upon which *N.J.S.A.*
18A:13-56 authorizes the Board of Review to prevent submitting
the issue of dissolution of a regional district to the voters—"Any
other reason which it may deem to be sufficient"—requires a
reason of the same character as the first three specified reasons.
*Denbo v. Township of Moorestown,* 23 *N.J.* 476, 481–82, 129 *A.*2d
710 (1957) (general words following specific words are understood
to be limited to things of same class or same general character);
*Hovbilt, Inc. v. Township of Howell,* 263 *N.J.Super.* 567, 571–72,
623 *A.*2d 770 (App.Div.1993), *aff'd,* 138 *N.J.* 598, 651 *A.*2d 77 (1994)
(*ejusdem generis* rule of statutory construction limits meaning of
general statutory words to include only objects similar to those
enumerated by preceding specific words). In other words, a
"sufficient" reason is one that implicates the State's constitutional
obligation for the maintenance of a "thorough and efficient system
of free public schools." Any less weighty reason would be an
inadequate ground for compelling constituent local school districts
and municipalities to preserve a regional school district against the
will of a majority of the voters in a majority of its local districts.

The arguments which the Garwood appellants have urged in
support of their appeal from the decision of the Board of Review
must be evaluated in this statutory context. They contend that
the decision should be reversed because it is "wrong, inequitable,
arbitrary and capricious." They also contend that the Board's
denial of their request for an evidentiary hearing violates their
right to due process of law; that the procedures employed by the
Board are contrary to controlling statutes; that its decision lacks
adequate findings of fact; and that the Board erred in "summarily

dismissing" its cross-petition. For the following reasons, we disagree and therefore affirm.

Appellants' first argument has essentially two components. The first is that the Board's decision is "wrong, inequitable, arbitrary and capricious," because dissolution of the regional district will reduce the quality and increase the cost of the high school education provided to students who live in the constituent municipalities. The second is that dissolution will deprive them of their "equity" in the assets of the regional district. We reject these contentions for several reasons. First of all, to the extent that appellants' assertions reflect merely their disagreement with the Board of Review on matters of educational and financial policy, we are obligated to defer to the judgments of the administrators whom the Legislature has authorized to make the judgments. *Board of Educ. v. Kraft,* 139 *N.J.* 597, 603–04, 656 *A.*2d 430 (1995); *Dennery v. Board of Educ.,* 131 *N.J.* 626, 643, 622 *A.*2d 858 (1993) (courts will generally defer to regulatory and administrative judgments of those in field of public education). Secondly, even if appellants' forebodings about the consequences of dissolution are realized, they do not satisfy any of the three specific reasons enumerated in *N.J.S.A.* 18A:13–56 as grounds for foreclosing an election on the issue of dissolution and they do not satisfy the fourth statutory criterion because they do not foreshadow conditions inconsistent with the State's obligation to assure the maintenance of "a thorough and efficient system of free public schools" in all of the local school districts which now compose the regional district. Furthermore, appellants' argument about their loss of equity is premised on a claim to an ownership interest in assets of the regional district; that claim is without legal basis.

We also disagree with appellants' argument that their rights to due process of law were violated when their request for an evidentiary hearing was rejected. They assert:

An evidentiary hearing is required here because there are disputed adjudicatory facts; *i.e.,* facts about the Regional District and about the six constituents, their schools and their educational needs; facts about the financial and educational impacts of dissolution; and facts regarding the basis for Garwood taxpayers'

support for the Regional District over the years. The disputed facts include, for example: the cost of running four high schools after dissolution; the motivation of the petitioning districts (*i.e.*, is unlawful socio-economic discrimination among them?); and the degree of diminution in quality that will result from narrowed programs in four small high schools.

■ However, the flaw in appellants' argument is that they have not shown that there are any genuine disputes material to the issue which the Board of Review was required to decide. They have shown that the cost to Garwood residents of providing a high school education is likely to rise following dissolution because the cost per pupil for the entire regional district has been approximately $16,000 a year and the tax levy per high school student enrolled from each community has ranged from a high of $20,578 for Mountainside to a low of $8,669 for Garwood. But whether or not a policy argument could be made for requiring school districts with a larger tax base per pupil to subsidize school districts with a smaller tax base per pupil, that policy is not reflected in the statutes providing the procedures and conditions for dissolution of regional school districts. Appellants have not shown that there is a genuine dispute about whether dissolution would result in any of the three conditions which *N.J.S.A.* 18A:13–56 specifically enumerates as grounds for denying permission for a dissolution election or in any other condition inconsistent with the maintenance of a "thorough and efficient" school system in each of the constituent districts of the former regional district. Under these circumstances, the public hearing which was conducted was all of the "process" that was "due."

Appellants allege that various procedural defects marred the functioning of the Board of Review and require invalidating its decision permitting the regional district to conduct a dissolution election. The first of these defects is the alleged failure of the Commissioner of Education to function as a member and chairman of the Board of Review as required by statute. The appellants infer his failure to act because he was absent from the public hearing conducted by the Board of Review, an assistant commissioner attended in his place, and the Commissioner's notice fixing

the date of the dissolution election and the County Superinten-
dent's memorandum scheduling the election both list the assistant
commissioner as a member of the Board of Review.

In our view, the facts to which appellants point do not
support their contention that the Commissioner did not function as
chairman and a member of the Board of Review. First of all, the
statute provides that the Board is to "make its findings and
determination, by the recorded vote of at least three of the four
members of the board . . .," *N.J.S.A.* 18A:13–56, implying that, in
accordance with the usual rule, three of the four members of the
Board constitute a quorum. *Matawan Regional Teachers Ass'n v.
Matawan–Aberdeen Regional School Dist. Bd. of Educ.*, 223
*N.J.Super.* 504, 507, 538 *A.*2d 1331 (App.Div.1988) ("[a]t common
law, a majority of a public body constitutes a quorum"). Conse-
quently, the Commissioner's absence from the public hearing was
of no legal significance. All of the statements presented at the
public hearing were submitted in writing and were available to the
Commissioner. *See Arlington Assocs. v. Township Council of
Parsippany–Troy Hills Township*, 118 *N.J.Super.* 418, 288 *A.*2d
293 (App.Div.1972) (finding that member of board need not be
present at meeting to vote on matter presented as long as
testimony transcribed and other evidence available for review).
Apparently the assistant commissioner assisted the Commissioner
in performing his duties on the Board of Review and was available
to communicate to the Commissioner information submitted to the
Board. That would be neither unusual nor improper. *Cf. In re
Kallen*, 92 *N.J.* 14, 22–23, 455 *A.*2d 460 (1983) (noting that role of
administrative law judge in administrative hearing is to conduct
hearings, make factual findings, and recommend decisions to
agency heads); *see also In re Shelton College*, 109 *N.J.Super.* 488,
263 *A.*2d 810 (App.Div.1970) (upholding decision of Board of
Higher Education to permit absent Board members to vote on
issue as long as all evidence considered). The presumption of
regularity to which the Commissioner and the Board are entitled
supports the conclusion that the Commissioner considered all of

the evidence material to the Board's decision. *Dennery, supra,* 131 *N.J.* at 643, 622 *A.*2d 858; *Township of Bernards v. State Dept. of Community Affairs,* 233 *N.J.Super.* 1, 27, 558 *A.*2d 1 (App.Div.), *certif. denied,* 118 *N.J.* 194, 570 *A.*2d 959 (1989). The Board of Review's November 8, 1995 initial decision, its December 13, 1995 amplification of its decision, and a subsequent decision denying appellants' motion for a stay pending appeal are all signed by the Commissioner. The listing of the assistant commissioner as a member of the Board of Review on the distribution lists of two documents is insufficient to establish any material irregularity in the functioning of the Board.

■ Appellants' remaining allegations of procedural defects all allege, in effect, that the Board of Review failed to comply with the Open Public Meetings Act, *N.J.S.A.* 10:4–6 *et seq.* The pertinent section of the Act reads as follows:

> Any action taken by a public body at a meeting which does not conform with the provisions of this act shall be voidable in a proceeding in lieu of prerogative writ in the Superior Court, which proceeding may be brought by any person within 45 days after the action sought to be voided has been made public; provided, however, that a public body may take corrective or remedial action by acting de novo at a public meeting held in conformity with this act and other applicable law regarding any action which may otherwise be voidable pursuant to this section....
>
> [*N.J.S.A.* 10:4–15a.]

In the present case, the action which appellants seek to void was taken no later than November 8, 1995, when the Board of Review issued its initial decision. Appellants did not challenge the Board's action on the basis of its alleged nonconformity with the requirements of the Open Public Meetings Act until they filed their brief with this court on June 7, 1996. The delay is of particular significance in this case because the date of the dissolution election was announced March 8, 1996, and the election took place on May 14, 1996. If appellants had acted promptly to challenge the Board's action for nonconformity with the Open Public Meetings Act, there would have been no question of invalidating the election and conducting a new one; the Board would have had the opportunity to correct or remedy any defects well in advance of the election. Under these circumstances, appellants are not entitled to relief on the basis of the alleged

violations of the Act. *See Jersey City v. State Dept. of Environmental Protection,* 227 *N.J.Super.* 5, 22, 545 *A.*2d 774 (App.Div.), *certif. denied,* 111 *N.J.* 640, 546 *A.*2d 551 (1988); *Township Committee v. Edgewater Park Housing Authority,* 187 *N.J.Super.* 588, 603, 455 *A.*2d 575 (Law Div.1982).

Appellants' remaining allegations are that the decision of the Board of Review lacked adequate findings of fact and conclusions of law, that it "wrongly brushed aside" the County Superintendent's report, and that the Board of Review summarily dismissed their cross-petition. These allegations are without merit. *R.* 2:11–3(e)(1)(E). We have explained the limited basis upon which the Board of Review may prevent a dissolution election; these arguments of appellants assume that the Board of Review has a broader discretion than the statute has accorded it. Appellants' cross-petition did not warrant any more detailed answer than was given to it by the Board.

The decision appealed from is therefore affirmed.